We will now hear United States v. McBee, number 255049. Counsel? Good morning, your honors, and may it please the court. My name is Malia Castillo, and I represent the appellant in this case, Mario Terrell McBee. I intend to attempt to reserve some time at the end for rebuttal. At the outset, I do want to say that we briefed three issues in this case. One of those was a Second Amendment issue. We recognize that, pursuant to Vincent B. Bondi, that that is foreclosed. So I do not intend to argue that. The government argues the standard for review for the remaining issues is plain error. So I do want to stress that the only issue at trial was whether Mr. McBee had knowledge that he possessed a gun and ammunition. Mr. McBee was a black man who showed up to the Claremore Indian Nation Hospital. He was unconscious, actively overdosing. The government acknowledged in its opening that the main issue at trial was knowledge. Specifically, they asked the jury to evaluate whether Mr. McBee had knowledge of possessing a particular pistol and whether he had knowledge of possessing ammunition. Likewise, the defense counsel, in its opening, said that we do not dispute that he possessed the gun, that he possessed the ammunition, that knowledge was the central issue for the jury to decide. Before testimony began, defense counsel and the government's counsel had entered into two stipulations. And that was read to the jury before any testimony was given. The first stipulation recognized that the parties agreed that Mr. McBee was a felon at the time of the offense conduct on April 23rd of 2021, and that he knew of his felon status. The second stipulation that the parties entered into stated that all of the offense conduct in the Mr. McBee were present in the Northern District of Oklahoma. So really, with the remaining issues, what this boils down to is whether or not whenever Agent Williams got up to testify and said that all of the elements have been met, if that phrase, that all of the elements have been met, was inclusive of every element, if he was directly testifying to each of those individually, the first of which is the knowledge element, that he knowingly possessed the firearm or ammunition. The only issues left approved because of the stipulations were the interstate nexus, which they had Agent Williams testify to, and then the knowledge element. So most of the trial was geared towards proving Mr. McBee's knowledge. So we maintain that, yes, that expressing a general opinion, going back to what the central question is here, that a person is guilty, that all of the elements have been met, necessarily means that that person is testifying to each of the elements individually. Just because he didn't enumerate, that Agent Williams didn't enumerate, does not mean that the jury wouldn't have realized that he was talking about each of those specifically. Counsel, what if Mr. Williams had just said, we didn't investigate further because we had all we needed? Would that be an error? No, I don't think so, because there was actually another witness, FBI Agent David Young, who said something similar. He was asked, why didn't you go out to further investigate? And he said, I think this is a semi cut and dry case, is what he said. And I think the semi part of that allowed for the jury to make an inference. And I think that was, I guess, squishy enough that the jury could evaluate that and then evaluate the evidence presented. I guess my question is, what's the difference? If he says, we had everything we needed to go to the grand jury, we didn't look in the car because we thought we had everything we needed, is it really the use of the word elements? Does that make all the difference? I think it does in this case, because when the jury gets their instructions, all the elements are enumerated. The very first one is the one about knowledge. It's an issue. But then also, sorry, can you repeat your question? Well, it just seems like if you didn't have an argument with, I guess the question is, would you have any argument if he hadn't used the word element? As long as he didn't use anything that was substantially similar to the mens rea element to knowingly, I don't think we would have an argument. I think specifically because he did say element, that the jury could put two and together, that he was commenting on every single thing. And I think, too, if they were framed in a purely investigatory sense, which I know that that was how it was sort of presented within the realm of his regular scope and duties, then that would be a different discussion. But because he went outside of his expertise and said that every single element, not the ones that I am responsible for as a case agent or as the nexus expert, if he had framed it that way, I don't think that we would have an argument. But I think because he went outside of that and started testifying to the mens rea element or all the elements. Well, that actually leads to a different question. So Agent Williams was called to be the nexus expert, correct? Yes. I read through the transcript, and there was a fairly extensive foundational testimony to qualify him as a nexus expert. And then the prosecutor moved to have him admitted or qualified again as a nexus expert. All right. But when he made this statement, this was not just about nexus. Is it obvious that when he gave this particular testimony that you're challenging that he was testifying as an expert? An expert as to nexus or an expert, just generally? Was he generally? Was that actually expert testimony, or was that agent lay witness testimony? Yeah, so I think it could fall one of two ways, that he was testifying just as a nexus expert. But I think because of how he was certified and the questions that were asked and the answers that he gave leading up to that, he talked about his 26 years in experience. He was asked about how many of the cases that he investigated involved guns, and he said 75% to 80%. He went at length talking about how many guns he had interacted with in his career, how much ammunition he had looked at in his career. And so I think from a jury's perspective, they could see that as, OK, he is also an authority on investigative techniques, what needs to be done in a case. He should be familiar with what needs to be proven and that sort of thing. Counsel, can I make sure I'm tracking on your argument here? The 704B refers specifically to mental state or condition. As I understand your argument, you're saying that because Agent Williams used the words elements, it would have been obvious to the jury that by elements, what he really meant was knowledge, because that's the only element that was at issue. Yes. Do you have any cases that have taken that sort of inferential leap that the jury has, it's just clear to them that there's only one element at issue, and a witness who doesn't even refer specifically to a mental state or condition, that that's found to be 704B error? I think the closest one that we have is that Mary Boy case, because in that case, it was thoroughly discussed that knowledge was the only element, because- In Mary Boy, though, the witness specifically testified about recklessness. Correct. That was the mental state at issue, and that was the testimony that the agent said several times, that would be reckless. Correct. That was the testimony. So that was square on point to 704B. That's what I'm getting. So if it's not Mary Boy, or at least hint, because that was testimony specific towards mental state or condition, are there any other cases besides Mary Boy that you would point us to? I think Diaz also is beneficial for us on that point, because in that case, the court said that if- and this is the Diaz from the Supreme Court 2024, because I know there are two Diaz cases. But that one talked about if, in a hypothetical, if all defendants knew, or all couriers knew a certain thing, or if some of them knew a certain- had that knowledge requirement, all couriers would include the defendant. And so that would impart that knowledge that the expert would have been testifying to the defendant. And so the court had a discussion about how that would have changed the outcome, instead of saying some couriers might know. And so I think, to your point, that would be our strongest case. And help me understand a potential overlap between your 704B argument and a 403 argument. Are those distinct, and how should we think about those? So I think the 403 argument goes more towards our second issue, being outside of the scope. I do think, though, that this is prejudicial, and that this gets to the main question, being if he's not commenting on elements in an enumerated way, if he's kind of lumping them all together, is he necessarily commenting on all of them? And I think that really, where that comes into play is our first and third prong. So I guess, to your point, the prejudice issue. So if there is an error, then 704B is necessarily violated, because he is an expert. I thought the 403 argument was being made in conjunction with your rule 702 argument. So what is your 702 argument, then? So the 702 argument is that he was recognized as a nexus expert, and that essentially, he could not have, in either way, testified to an allay opinion about Mr. McBee's knowledge, because he didn't have firsthand knowledge of what Mr. McBee's mental state was. He, in fact, didn't even interview him. But then he also couldn't testify in an expert position about his mental state. Why couldn't the fact that he testified to being involved in, I think you said, thousands of investigations. Is that what he said? Yes. Including 20 years with ATF, lots and lots of gun cases. Why wouldn't that be rule 702 experienced-based testimony? Because I think he still doesn't have specific knowledge of what Mr. McBee's mental state was. He didn't. Isn't mental state, in most cases, including this one, the product of inferences from circumstantial evidence? And didn't he have the information that everyone else had, that the ER nurses went out and they found the gun? Sure, I do think that he's still encroaching on the jury's role as fact finders. And so I don't. You're not making an argument that he's expressing a legal opinion about the elements. I would in the context of the 704B argument. But 702, it's more that he's going outside of his expertise, if that makes sense. Did that answer your question? Well, I was just interested because we started with 403. But I thought that 702 was the lead up. Yes, it was. And so, yes, it was prejudicial. Like I said, because he does not have any knowledge. And because of his role as an investigative officer with all of this experience, I think a jury would tend to trust him more than, say, a kind of run of the mill witness who witnessed a crime but wasn't a law enforcement officer. Counsel, I have a question going back to the earlier part of your argument. Did I understand correctly that you thought there was some importance that he used the word elements? Yes. All right. I looked at the jury instructions and in going from memory, a lot of times they use the word elements and elements instruction. I didn't see that in this case. In fact, as I looked through all the jury instructions, I thought I only saw one reference to the word element. Am I wrong in that? I can't recall off the top of my head. I think with the jury instructions. Well, if you can't recall, under my asses, would that make a difference in your argument that when he says elements, that's not so important and it could really mean it has no particular meaning to a juror and if there's nothing in the jury instructions, it could just be part of his investigatory process and that is that we had everything we needed type testimony. I do think it's still a- Why is that an improper analysis? I think because even if the jury instructions don't specifically say element, and sorry, I recognize that my time is up. Would you like me to continue? Please do. OK. Sorry, I lost my train of thought. So just because the jury instruction, if it doesn't say element, it still enumerates what the jury must find in order to get a conviction. And if you have an ATF agent, whether he is testifying in his expert capacity or not, getting up on the stand and saying, all of these things that you need to find in order to get a conviction are met, whether the term element is used or not is, I think, not irrelevant, but maybe not as important because the idea is that everything that he felt was needed for conviction was satisfied. Thank you. Counsel, we appreciate your argument. We'll now hear Ms. Loma. Good morning. May it please the court, counsel. My name is Lina Olam, and I represent the United States. I'd like to begin with Judge Murphy's last question. He's exactly right. On page 132 of volume one of the record, the jury instruction number 14, which presents the elements of the offense, does not use the word elements. It just says that in order to find the defendant guilty, you must find each of the following beyond a reasonable doubt. And then it lists each of the elements of the offense. The fact that the defense's reliance on Agent Williams' referenced elements, the fact that Agent Williams' testimony did not substantively track the language of the jury instructions demonstrates why, in this case, there was no 704B error at all. Agent Williams not only did not opine about Mr. McBee's mental state, he did not mention the mental state required, he did not mention Mr. McBee's mental state, he did not engage in hypotheticals suggesting that the mental state was met, like in some of these cases. Counsel, why wouldn't this point about the jury instruction fit a little more comfortably in either step two or three of plain error analysis? In other words, yes, the word element may not have been used in the instruction, but the jury was instructed that you have to find 1, 2, 3, 4. And he did talk about all the elements. Maybe that doesn't create a tight connection, but it does still raise an issue. And so why isn't the more comfortable fit be if there was an error, it wasn't plain, or it didn't affect substantial rights? I think I'll have to echo my colleague from the last case and say this is both. But here, all of the 704B cases that focus on whether an agent opined about mental state, there was nothing here that suggested that when Agent Williams spoke about the elements, he was talking about mental state at all. In fact, looking at Agent Williams' testimony, particularly on redirect, I think at page 192 of volume three of the record, it's not even clear he understands that the mental state is an element of the offense. When he says it was on his body, the element of the crime is, and then he trails off and says, the firearm was on his person. I don't need to fingerprint him because it was on him. It was in his possession. As Ms. Castillo pointed out, though, the trial was all about knowledge. That's what both sides are arguing about in front of the jury. They're getting knowledge thrown at them from day one to the end of trial, closing arguments, everything else. And why wouldn't, in thinking about this and going back to Agent Williams, why wouldn't they say, well, Agent Williams must have thought everything was satisfied? Because the questions to Agent Williams didn't concern Mr. McBee's knowledge at all, and his answers didn't either. What they concerned was the adequacy of his investigation and the adequacy of the FBI's investigation. That portion of Agent Williams' testimony had nothing to do with the question of Mr. McBee's knowledge. It had to do with whether they had conducted an adequate investigation. And because Agent Williams' Don't investigations, I mean, if knowledge is going to be an issue, don't investigations ever look for evidence about knowledge? And they should, but the question here and the context in which Agent Williams was being asked these questions was the context of, did you have enough evidence for the investigation, i.e., under a probable cause standard, not under the beyond a reasonable doubt standard that the jury was being asked to apply. Furthermore, the reliance in Agent Williams' testimony on the word elements and the fact that the jury was never told that knowledge was an element suggests that Agent Williams' testimony could not be read to imply that he had that knowledge because his reference to elements was not what the jury was instructed they had to find. Counsel, can I ask, you just said the jury was never told that knowledge was an element, but the way I understand the presentation of both parties is that knowledge was really the only thing at issue. So the whole, so whether they were told formally it was an element, didn't the jury know that really the only question they had to decide is whether the gun that was found on Mr. McBee, whether he knew it was there? Absolutely, and to the extent that I suggested that they weren't told that they had to find his knowledge, that's not, that was not what I intended to say. What I meant was that the word elements was not used when they were told they had to find Mr. McBee's knowledge of the firearm, and you're absolutely right, they were told over and over, and particularly in the government's closing that the only question really remaining for them was whether Mr. McBee knew. And moving forward to prong three, the substantive rights analysis, here, very differently from Maraboy, both the fact that Agent Williams' testimony did not track the language of the jury instructions and the fact that the government never mentioned Agent Williams' testimony about the fact that the elements were met, but rather focused on all of the other evidence presented at trial in reviewing, both in first close and in second close, the evidence that showed, both direct and circumstantial, that Mr. McBee would have known about the gun that was concealed in his pants. In fact, in that close, in that second close, counsel specifically referenced the gun, and there's a picture of that gun in our supplemental record on appeal, and counsel asked the jury to find that anyone who had a gun that size in their pants and was conscious, as Ms. Mitchell testified Mr. McBee was for most of their trip to the Claremore Indian Hospital, would have known that they had that gun in their pants. And the government's focus on that direct and circumstantial evidence of Mr. McBee's knowledge, rather than on Agent Williams' passing comments in the context of the adequacy of his investigation, shows that in this case, very differently from Mary Boy, even if there was an error and the error was plain, which it was not under this court's case law, even if it were, this is not a case where any error affected Mr. McBee's substantial rights. In assessing, let's stay with step three for just a minute. In assessing substantial rights, is it appropriate for this court to consider that the jury notes suggested that this was a close call? Absolutely, this was a close case and the court can consider that it was a close case. But given the context of Agent Williams' testimony and the government's remarks in closing, to the extent that this close call was resolved by the jury ultimately in a finding of guilt, nothing in the record suggests that Agent Williams' testimony was the thing that pushed them over the edge. Rather, it was, if the context suggests, it was the modified Allen instruction. Why would it be possible for, I mean, the jury's, well, they found this gun. That's really the whole case. They found this gun where they did. Both sides argued knowledge to a fairly well. We're not really sure. Well, but you know, we had this guy, Williams, who's done thousands of these cases. He must know what he's doing and he said all the elements are met. But he never said or even suggested that Mr. McBee knew. In fact, it wasn't clear that Agent Williams knew that Mr. McBee had to have known that the gun was there. He said it's in his possession. He addressed the element of possession, not the element of knowing possession. And so there was. No, no, he said elements. He said all the elements are met. Yes, and then he said the element of the crime is, it's on his person. That's not the element of the crime. And the jury was not told that they had to find the element. I mean, he didn't say it once, he said it twice. Oh, he said it at least three times. Oh, three times, all right. Because he said it on redirect as well. Okay. He was eager to help, but unfortunately, it isn't clear from the record that he necessarily understood that he was talking about knowledge. And certainly, neither the questions nor his answers implicated the core concerns of Rule 704B, that he stated or even impliedly stated that the defendant had the requisite mental state here. Rather, all of the discussion, particularly in the government's closing, was all of the circumstantial evidence that showed that Mr. McBee knew about the gun in his pants. And to the extent that after sending those notes to the court, the jury ultimately found that Mr. McBee knew is much more likely under these facts to have been based on that circumstantial evidence presented, as opposed to Mary Boyd, where the government emphasized the challenge testimony, and particularly by wrapping up their first close by talking about that testimony as a way of showing the defendant's extreme recklessness in that case. Counsel, you mentioned this trial was a close call, and he was having a defendant who stipulated to having a prior felony conviction and knowing that he was a prior felony conviction, a prohibited person, and the gun on his person. I'm just trying to understand the closeness of the call in terms of the theory of defense that was presented. Did they, was the thrust of the defense that the government just can't prove he knew because by the time the gun was found, it was unconscious, or was it that the mother's friend had planted the gun, or sort of help me understand the context. And like you, I was not at the trial, but from the defense closing argument, it appears that the thrust of the defense case was that Ms. Mitchell somehow planted this gun on Mr. McBee, and the government's second close addresses this, talks about how unlikely it was that Ms. Mitchell, an elderly woman who was reluctant to testify against the son of her good friend, who was volunteering to take this man to the Claremore Indian Hospital, who testified that had she known he had a gun, would not have let him in her car. The absolute incredibility of the defense theory. And so ultimately, in deciding that the circumstantial evidence, both the testimony of Ms. Mitchell, but also the testimony of Brandy Eubanks and Isaac Pinser, the nurses who found the gun, who transferred him, Mr. McBee, from Ms. Mitchell's car to the gurney, the gun didn't come loose, the gun was firmly lodged in Mr. McBee's pants when they found it. In citing all of that evidence, it is far more likely that in concluding that Mr. McBee knew about the large gun tucked into his pants, that the jury credited those pieces of testimony rather than Agent Williams passing reference to the elements of the offense. Could you briefly speak to the Rule 702 argument? I didn't see much in your brief about that. And I will say, I don't think the question here is whether Agent Williams' testimony went beyond his expertise, because the questions he was being asked were about the adequacy of his investigation, and so they were based on his expertise as an experienced ATF agent who had conducted hundreds of these kinds of investigations. To the extent that he was testifying about the legal standard of the elements of the offense, that may have been improper legal testimony, but that wasn't the basis of the objection. And here, certainly it was an error, let alone plain error, to allow Agent Williams to testify about the reasons he thought his investigation, he did not need to do additional investigation like additional forensic testing. And for that reason, even if there were a Rule 403 error, that error didn't affect Mr. McBee's substantial rights. If there are no further questions. Hearing none. Thank you, Your Honors. Thank you, counsel. Case will be submitted, and counsel are excused. Thank you for your arguments.